IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GREGORY SHAW,** **Petitioner,** v. **JOHN VARGA, Warden, Dixon Correctional Center,** **Respondent**. | Case No. 18 cv 06680 Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Gregory Shaw filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his conviction for aggravated domestic battery. (Dkt. 1). His petition presents four claims. For the reasons that follow, Shaw's petition [1] is denied, and no certificate of appealability shall issue.

## BACKGROUND

When considering habeas petitions, federal courts must presume that the factual findings made by the last state court to decide the case on the merits are correct, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *McCarthy v. Pollard*, 656 F.3d 478, 483; (7th Cir. 2011); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012). Shaw has not provided clear

and convincing evidence to rebut the presumption of correctness here, so this factual background is taken from state court findings.[1]

**1. Trial**

Following a jury trial, Shaw was found guilty of aggravated domestic battery against his ex-girlfriend Linda Howard and sentenced to 21 years' imprisonment. *People v. Shaw*, 2019 IL App (1st) 152979 ¶ 1. At trial, Howard testified that she and Shaw dated for about three and-a-half months. She ended the relationship in early May of 2011. Howard and Shaw never lived together, neither during their relationship nor after it ended. (Dkt. 15, Ex. N, 45).

On June 2, 2011, Howard was walking down a Chicago street, talking on the phone with a different ex-boyfriend, Tony, when she heard Shaw yell her name. Howard continued walking, and Shaw said "you better stop." (Dkt. 15, Ex. N, 23). When Shaw caught up with her, Howard ended the phone call. Shaw then asked, twice, to see her phone. Both times Howard refused. Shaw took Howard's phone from her hand and said that there "better not be any text messages from Tony." (*Id.* at 25). Howard asked for her phone back, but Shaw refused and swore at her.

When Howard attempted to walk away, Shaw pushed her up against a fence, put his hand around her neck, and tried to choke her. (Dkt. 15, Ex. N, 26) Shaw knew Howard suffered from asthma, and during the attack she told him she was having trouble breathing. Shaw told her to "shut up" and again swore at her. (*Id.* at 27)

---

[1] As described below, the state appellate court rested its decision on the state appellate defender's motion to withdraw. These factual findings stem from that memorandum, as adopted by the state appellate court, and additionally from the state court record.

Shaw then took Howard to a nearby alley. He pushed her against a fence and slapped her. Shaw picked up a brick and threatened to hit Howard with it before throwing it to the ground. Shaw also continued to choke Howard. She testified that she could not breathe and felt like she was going to pass out. (Dkt. 15, Ex. N, 30-31). As Shaw attacked Howard, a Chicago police vehicle pulled into the alley. Shaw told Howard to tell police that everything was okay, or else he would kill her. The police arrested Shaw. (Dkt. 14, Ex. H, 8-9).

At trial, Howard testified about two previous incidents with Shaw. The first occurred on June 1, 2011, the night before Shaw choked her in the alley. Howard was at her home, which she shared with her parents, and Shaw told her he was coming over to collect clothes she washed for him. (Dkt. 15, Ex. N, 18, 35). While at home, Howard heard banging on the door. She looked through the peep hole and saw Shaw kicking the door. Howard told Shaw to stop; he did not. Howard then called police, but Shaw left before they arrived. The police returned to Howard's home with Shaw in custody. (Dkt. 14, Ex. H, 9).

The second incident occurred on May 6, 2011. Howard was out to dinner with a friend when Shaw called her several times and said he wanted her home by a certain time or else he would "kick [her] ass." (Dkt. 14, Ex. H, 9). After Howard returned to her home, Shaw arrived and broke a window in Howard's bedroom. Howard called the police and Shaw fled. When police arrived, they located Shaw in a neighbor's yard and took him into custody. (*Id.*).

Before trial, the State moved *in limine* to admit evidence of these two prior incidents of domestic violence. (Dkt. 15, Ex. M, 205-6). Shaw's trial counsel orally objected to the prosecution's motion, but did not file his own written motion on the subject. In a proceeding outside the presence of the jury, the court granted the motion and admitted this evidence.[2] The state trial court determined that the probative value of the two prior incidents outweighed undue prejudice to Shaw. (*Id.*). Shaw's trial counsel also orally objected to the introduction of the two prior domestic violence incidents during trial. When his objections were overruled, he asked that the jury be admonished. (Dkt. 15, Ex. N at 34, 40, 81).

**2. Direct Appeal**

On direct appeal, Shaw argued that the trial court abused its discretion at sentencing by placing undue weight on defendant's criminal history while placing little weight on mitigating factors. *People v. Shaw*, 2014 IL App (1st) 121175-U, ¶ 7. Shaw's criminal history included seven felonies from 1980 to 1995 and two previous incidents of domestic battery in 2005 and 2006. *Id.* at ¶ 2. Mitigating factors included that Howard was not seriously injured during his attack on her, Shaw's troubled upbringing, and his history of mental illness. *Id.* at ¶ 6. The appellate court held that the trial court did not abuse its discretion in sentencing Shaw to 21 years' imprisonment. The court also corrected Shaw's fines and fees to reflect the time he spent in pre-sentence custody. *Id.* at ¶ 14.

---

[2] Under 725 ILCS 5/115-7.4, the state trial court may admit evidence of other offenses of domestic violence.

4

Shaw then filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court, which the court denied. *People v. Shaw*, No. 118124, 2014 Ill. LEXIS 1345. Shaw's direct-appeal PLA raised the sentencing issue. He did not include any claims that he later raised in his post-conviction petition.

### 3. Post-Conviction

In July 2015, Shaw filed a *pro se* post-conviction petition, raising four claims: 1) the Illinois domestic battery statute violates due process because it does not specify a timeframe for who is considered a family or household member; 2) his trial counsel was ineffective for failing to file a motion *in limine* to bar the State from using uncharged domestic violence conduct; 3) the trial court erred in failing to conduct a *Krankel* hearing regarding trial counsel's ineffectiveness; and 4) his appellate counsel was ineffective for failing to raise arguments about a) the Illinois domestic battery statute's constitutionality and b) trial counsel's failure to file a motion *in limine*. (Dkt. 15, Ex. R, 31) The trial court summarily dismissed the petition, finding that the claims were frivolous and without merit. (*Id.* at 66)

Shaw appealed the denial of his post-conviction petition, re-stating the same four claims. *People v. Shaw*, 2017 IL App (1st) 152979, ¶ 2. The state appellate defender moved to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), concluding that an appeal on these claims would be without merit. *People v. Shaw*, 2017 IL App (1st) 152979, at ¶ 3. Shaw provided a *Finley* response, reiterating his four claims. The appellate court granted the appellate defender's motion and affirmed the trial court's decision. *Id.* at ¶¶ 4-5.

When the state appellate court granted the motion and affirmed the trial court's decision, it did not write its own analysis of the merits of the case, but instead used the state appellate defender's *Finley* motion. *People v. Shaw*, 2017 IL App (1st) 152979. In doing so, it implicitly reached the merits of all of Shaw's claims. *See Wilkinson v. Cowan*, 231 F.3d 347, 348 (7th Cir. 2000) ("[T]he state appellate court, when it elected to affirm the circuit court's judgment outright, without inviting [petitioner] to brief his appeal *pro se*, implicitly reached the merits of all the issues he had raised in his post-conviction opinion."). This Court therefore reviews the appellate court's decision and the reasoning found in the appellate defender's motion, as adopted by the state appellate court.

After the state appellate court affirmed the post-conviction trial court's decision, Shaw filed a post-conviction PLA with the Illinois Supreme Court, again raising all four claims. The Illinois Supreme Court denied his post-conviction PLA. This habeas petition followed. In it, Shaw raises the same four claims as in his original post-conviction petition (*supra*), appeal, and PLA (Dkt. 1).

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (internal quotation marks omitted). To properly exhaust a

6

claim, a petitioner must fully and fairly present federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).

If a petitioner has failed to properly assert his federal constitutional claims at each level of state review, then his claims are procedurally defaulted. *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). If a habeas petitioner overcomes procedural default, then a federal court may consider the merits of his federal habeas claims. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). But just because a federal court independently concludes that the relevant state court decision applied clearly established law erroneously does not mean that the court may grant the writ; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 24 144 (2003). "This is a difficult standard to meet; 'unreasonable' means 'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank,* 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 763 (7th Cir. 2002)).

7

## ANALYSIS

Shaw's habeas petition raises four claims: 1) the Illinois domestic battery statute violates due process because it does not specify a timeframe for who is considered a family or household member; 2) his trial counsel was ineffective for failing to file a motion *in limine* to bar the State from using uncharged domestic violence conduct; 3) the trial court erred in failing to conduct a *Krankel* hearing regarding trial counsel's ineffectiveness; and 4) his appellate counsel was ineffective for failing to raise arguments about a) the Illinois domestic battery statute's constitutionality and b) trial counsel's failure to file a motion *in limine*. The State argues that claim 4(b) is procedurally defaulted, and that the remaining claims fail on the merits. (Dkt. 13, 6). The Court disagrees that Shaw procedurally defaulted—instead, he properly raised all claims at each stage in state court. However, his habeas petition fails on the merits.

### A. Procedural Default

Before presenting a claim in a federal habeas corpus petition, the petitioner must first give the state courts an opportunity to act on the claim. *O'Sullivan*, 526 U.S. at 842. This requires the petitioner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. In Illinois, that means asserting claims not just before the Illinois appellate court, but also in a PLA to the Illinois Supreme Court. *Snow v. Nicholson*, 880 F.3d 857, 864 (7th Cir. 2018). When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to

raise that claim has now passed, the claim is procedurally defaulted, and a federal court is, as a general rule, barred from reviewing the claim's merits. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

Respondent argues that claim 4(b) is procedurally defaulted. However, after reviewing the record, the Court concludes that Shaw raised this claim at each level of review: his post-conviction petition, his appeal of that petition, and in his PLA.[3] In Illinois, a petitioner may present habeas claims either on direct appeal or on post-conviction, so long as he makes claims at each stage of the appellate process. *United States ex rel. Perales v. Fews*, No. 00 C 5279, 2003 U.S. Dist. LEXIS 23930, at *8 (N.D. Ill. Jan. 15, 2004). Accordingly, Shaw raised all four claims through one complete round of state court review. The Court will now reach the merits of each claim.

**B. Unconstitutionality of Illinois Domestic Battery Statute**

First, Shaw argues that the Illinois domestic battery statute is unconstitutionally vague because it does not specify a timeframe for who is considered a family or household member. The Illinois appellate court reasonably rejected Shaw's constitutional challenge to the Illinois domestic battery statute. The Court determined that the statute does not violate due process for vagueness even though the statute does not specify a timeframe for who is considered a family or household member. In the statute effective at the time of the incident, "family or household

---

[3] In the PLA, Shaw's fourth claim states that appellate counsel was ineffective for failing to raise "the foregoing issues." (Dkt. 15, Ex. J at 48) Because "the foregoing issues" include: 1) the constitutionality of the Illinois domestic battery statute and 2) the ineffective assistance of trial counsel to raise a motion *in limine*, Shaw effectively raised the ineffective appellate counsel claim. Respondent's brief incorrectly states that Shaw did not raise the ineffective appellate counsel claim at any point in the state review process. Shaw did indeed raise this claim, at *all* points of the state review process: at the trial level (Dkt. 15, Ex. R, 41), on appeal (Dkt. 15, Ex. G, 2), and in his PLA (Dkt. 15, Ex. J, 48).

9

member" included "persons who have *or had* a dating or engagement relationship." 725 ILCS 5/112A-3(3) (eff. Jan. 1, 2005, to June 30, 2011) (emphasis added).

The appellate court reasonably relied on *People v. Wilson*, 214 Ill.2d 394 (2005). *See Cullen v. Pinholster*, 563 U.S. 170 (2011) (federal habeas review of state court proceedings was limited to the record before the state court that adjudicated the issue on the merits). In *Wilson,* the Illinois Supreme Court addressed the constitutionality of the domestic battery statute. The *Wilson* court held that the lack of time limit on how long ago a dating relationship ended did not violate due process and was not unconstitutionally vague. *Id.* ("[T]he statute has no time limit. But that does not make the statute vague."). *Id.* at 400.

The facts in *Wilson* are similar to the case at hand, and the appellate court noted this similarity in its opinion. (Dkt. 14, Ex. H, 8-9). In *Wilson*, the defendant and his girlfriend had dated for ten months and broken up four months prior to the domestic battery. Here, Shaw and Howard had had dated for three and-a-half months and broken up one month prior to the domestic battery. While *Wilson* suggests that there may be *some* limit to when someone may be considered a family or household member, that limit is in the degree of decades, not months. ("Clearly, it was not unreasonable for the legislature to include within the domestic battery statute relationships that had been over for only a few months. Whether it was reasonable to include relationships that had ended 50 years ago is not before this court."). *Id.* at 403. Following the *Wilson* court, the appellate court concluded that the Illinois statute was not unconstitutionally vague and rejected Shaw's claim.

The appellate court reasonably relied on the *Wilson* decision in dismissing this constitutional claim.[4] It examined this claim under the correct standard and concluded that Shaw's claim was without merit. Thus, this Court must defer to the appellate court, its decision was neither contrary to, nor an unreasonable application of, clear established federal law 28 U.S.C. § 2254(d)(2). Thus, this claim fails.

## C. Failure of Trial Court to Hold a *Krankel* Hearing

Shaw's claim that the trial court failed to conduct a *Krankel* hearing is noncognizable by a federal court. Under *People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984), Illinois state courts may hold a hearing when a defendant presents a *pro se* motion for new trial due to alleged ineffective assistance of counsel. This hearing may result in the appointment of new counsel. *Krankel* hearings are a state law issue and therefore noncognizable by a federal court on habeas review. *Guy v. Butler*, No. 14 C 8581, 2015 WL 6165147, at *8 (N.D. Ill. Oct. 19, 2015) (holding that *Krankel* claim was noncognizable because *Krankel* "deals entirely with the protections afforded under state law").[5] Accordingly, this claim fails.

---

[4] Petitioner argues the merits of this constitutional claim. However, on habeas review, this Court does not conduct an independent analysis of the issues. It merely determines whether the state court reasonably applied federal law or reasonably determined facts in light of the evidence. Having determined that the state court's decision was reasonable, the Court declines to address the substance of the constitutional claim.

[5] Additionally, the state appellate defender, when moving to withdraw as counsel pursuant to *Finley*, noted that Shaw's *Krankel* claim would fail on the merits. "Shaw did not make any post-trial allegations of ineffective assistance of counsel to the court . . . nor did he attempt to file a *pro se* motion alleging ineffective assistance of counsel. Under these circumstances, the trial court was not required to conduct a *Krankel* hearing." (Dkt. 14, Ex. H, 13).

11

**D. Ineffective Assistance of Trial and Appellate Counsel**

To receive habeas relief on the merits of an ineffective assistance of counsel claim, Shaw must meet the performance-and-prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 647 (1984). Under *Strickland*, Shaw must show that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he was prejudiced by that deficient performance. *Id.* at 687-88. To satisfy the second element, Shaw must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Overall, judicial review of trial counsel's performance "must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689; *see also United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011).

On habeas review, the inquiry is doubly deferential: not only must the Court presume that "the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (internal quotation marks omitted), but under AEDPA this Court must also defer to the state court's application of *Strickland* unless it is objectively unreasonable. *See Knowles v. Mirzayance*, 556 U.S. 111, 123 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). To be clear, the Court is not deciding whether the state court's determination was correct under *Strickland*, but rather whether it "produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d 942, 948 (7th Cir. 2006) (internal quotation marks omitted). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably

determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123.

Here, the appellate court properly applied the *Strickland* standard when it held that Shaw was not prejudiced by counsel's failure to file a motion *in limine* regarding the two previous acts of domestic violence. *People v. Shaw*, 2017 IL App (1st) 152979. Before trial, the State filed a motion *in limine* to introduce the evidence of these two previous acts. Shaw's trial counsel made oral arguments in opposition. He was not required to file a written motion *in limine*, as oral motions and arguments may be sufficient. *See Vehorn v. State*, 717 N.E.2d 869 (Ind. 1999) ("Oral motions in limine suffice for purposes of evidentiary rulings."). Counsel fully presented his arguments in opposition to the trial court, albeit orally. This gave the trial court the opportunity to weigh counsel's arguments and to address them. Additionally, during the trial itself, Shaw's counsel objected to the introduction of these two prior acts, which the trial court overruled. Filing a written motion *in limine* would not have changed the result, given counsel's repeated objections and arguments.

It was therefore reasonable for the appellate court to determine that Shaw was not prejudiced by trial counsel's failure to file a written motion *in limine*. That decision was reasonable when considering the nature of the trial court's proceedings, trial counsel's multiple objections, and the Illinois law permitting admission of evidence of other domestic violence offenses.[6] Certainly, the appellate court's decision

---

[6] See footnote 2, *supra*.

13

"produced an answer within the range of defensible positions." *Taylor v. Bradley*, 448 F.3d at 948.

Similarly, it was reasonable for the appellate court to determine that appellate counsel was not ineffective, as appellate counsel is only ineffective if she fails to raise a meritorious issue which would result in relief—which was not the case here. *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) ("[A]n attorney is not ineffective for failing to raise a meritless argument."). Shaw argues that his appellate counsel was ineffective for failing to raise arguments about trial counsel's ineffectiveness for failing to raise the constitutional challenge and for failing to file the written motion *in limine*. As explained above, neither are meritorious claims. Appellate counsel, therefore, was not ineffective for failing to raise these arguments regarding trial counsel's ineffectiveness. *Id*. It was accordingly reasonable for the appellate court to reject this claim during the post-conviction proceedings.

The appellate court's determination was neither contrary to nor an unreasonable application of Supreme Court precedent. The appellate court expressly cited *Strickland* and applied that standard in a thorough and reasonable manner. It was not objectively unreasonable for the appellate court to hold that Shaw was not prejudiced by counsel's performance at both the trial and appellate levels. This Court must therefore defer to the state court's decision. *See Knowles* 556 U.S. at 123. Shaw's ineffective assistance of counsel claims fail.

14

**C. Certificate of Appealability**

If Shaw wishes to appeal this denial, he must first obtain a certificate of appealability. Under 28 U.S.C.§ 2253, "an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court" unless the circuit justice or judge first issues the certificate. 28 U.S.C.§ 2253(c)(1)(A). A certificate of appealability may issue only when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.§ 2253(c)(2). To make a substantial showing, a petitioner must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citations omitted). For the reasons discussed above, Shaw has not made a substantial showing of the denial of a constitutional right; reasonable jurists would not debate whether the challenges in his habeas petition should have been resolved differently, nor would they determine that Shaw deserves encouragement to proceed further on his habeas claims. The Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons discussed above, Shaw's habeas petition (Dkt. 1) is denied, and the Court declines to issue a certificate of appealability. The Clerk is instructed to enter judgment in favor of Respondent and against Petitioner.

E N T E R:

Dated: June 24, 2020

MARY M. ROWLAND
United States District Judge